UNITED STATES, Appellee

v.

Wayne E. ROSS, Sergeant
U.S. Army, Appellant.

No. 66,253.
CM 9000980.

U.S. Court of Military Appeals.

Argued Oct. 4, 1991.
Decided April 17, 1992.

For Appellant: *Captain Antonier L. White* (argued); *Colonel Robert B. Kirby, Major Michael J. Kelleher, Captain Cynthia J. Rapp, Captain Timothy P. Riley* (on brief); *Lieutenant Colonel Russell S. Estey.*

For Appellee: *Captain Robert J. Walters* (argued); *Colonel Alfred F. Arquilla* and *Lieutenant Colonel Daniel J. Dell'Orto* (on brief).

*Opinion of the Court*

SULLIVAN, Chief Judge:

Appellant was tried by a general court-martial composed of a military judge sitting alone at Fort Hood, Texas, on March 1, 1990. Pursuant to appellant's pleas, he was found guilty of three specifications of conspiring to alter a public record, *i.e.*, an "Army Service Vocational Aptitude Battery test," in violation of Article 81, Uniform Code of Military Justice, 10 USC § 881. In addition, he was also found guilty, pursuant to his pleas, of a single specification of wrongfully completing an "Armed Services Vocational Aptitude Battery test" for another soldier and three specifications of accepting money for [alteration] services with respect to the "Armed Services Vocational Aptitude Tests" of three other soldiers, in violation of Article 134, UCMJ, 10 USC § 934. He was sentenced to a bad-conduct discharge, confinement for 40 months, and reduction to E–1. The convening authority, pursuant to a pretrial agreement, approved this sentence but suspended confinement in excess of 24 months for

a period of 1 year. The Court of Military Review affirmed the findings of guilty and the approved sentence in a short-form decision issued on February 1, 1991.

This Court granted review of the following issue of law:

WHETHER THE MILITARY JUDGE ERRED BY ADMITTING AND CONSIDERING EVIDENCE OF UNCHARGED MISCONDUCT SIMILAR TO THE OFFENSES OF WHICH APPELLANT WAS CONVICTED.

We hold that no reversible error of law occurred in this case. *See United States v. Mullens*, 29 MJ 398 (CMA 1990).

Appellant pleaded guilty to several different offenses related to his duties as Special Testing Noncommissioned Officer at the Testing Standards Office, Fort Hood, Texas, between June 1, 1988, and February 28, 1989. Pursuant to a pretrial agreement, he joined a stipulation of fact designated in that agreement as Appendix II. Two stipulations are contained in this record of trial, but neither is designated Appendix II. In any event, appellant acknowledged that the first stipulation of fact contained in the record and marked as prosecution exhibit 1 was the stipulation which was part of his pretrial agreement. It describes the facts surrounding the offenses to which he pleaded guilty.

Trial counsel also moved to introduce a second stipulation of fact with attached papers marked prosecution exhibit 3. It states in pertinent part:

It is hereby stipulated by and between Trial Counsel and Defense Counsel, with the express consent of the accused that the following facts are true, susceptible of proof, and admissible at trial by the United States:

On 31 October 1989 and 6 December 1989 the accused rendered sworn statements, under oath, to MPI James L. O'Neil. Prior to giving these statements, O'Neil informed the accused of his rights using DA Form 3881 (attached). The accused knowingly, willingly and voluntarily waived such rights and rendered the attached statements.

[DA Form 3881 omitted.]

I, Wayne E. Ross, Want to Make the Following Statement Under Oath:

About Feb 1988 I was assigned to 565 Supply Co. and placed on special duty to the TASO office as the special testing NCO. Around May or June 1988 I was approached by one of the soldiers being tested that if I change their ASVAB test scores they would pay me money for it. Until Jan 1989 I did several other altering of soldier's test scores. I then left the TASO office in Feb 1989 and was reassigned to my unit, 565 Supply Co.

Q=Questions asked by Investigator Oneal.

A=Answers provided by myself.

Q: How did you change the scores on the ASVAB tests?

A: I did not change them, what happened was they would just leave them blank and I would fill in the tests for them.

Q: Who graded these tests?

A: I did.

Q: About how many ASVAB test scores have you wrongfully taken for other soldiers?

A: I don't actually take the test for the other soldiers, but just before they take the test which comes in ten parts, I tell them to leave about five or six questions blank and I would fill in the right answers when I grade the tests.

Q: *So how many tests have you done in this fashion?*

A: *Twenty or thirty. I'm not sure.*

Q: Do you keep a list of these people?

A: No.

Q: How many people in your company (565 Supply Co) have you done this for?

A: About three or four.

Q: What are their names?

A: SGT GOODMAN, SGT LARK, SP4 WARREN.

Q: What about people from other units?

A: I cannot remember the names of the other people.

Q: Have you ever approached people outside of the TASO office and asked them if they were interested in having their ASVAB or other Army test scores given high marks?

A: No.

(Emphasis added.)

Appellant objected to the judge's consideration of the portion of his pretrial statement noted above in italics. He admitted that this statement was voluntary under Mil.R.Evid. 305, Manual for Courts–Martial, United States, 1984, and admissible; nonetheless, he objected to admission of the challenged portion of the statement as uncharged misconduct. Trial counsel asserted defense waiver. Defense counsel then countered that he had waived foundation objections only.

The military judge ruled on this objection as follows:

I do not believe that the accused has waived his rights to object to any entries thereon. I think this situation is distinguishable from *United States v. Glazier* at 26 MJ 268, [(C.M.A.1988)], and also distinguishable from *United States versus DeYoung* at 29 MJ 78 [(C.M.A.1989)]. In those cases, the accused was deemed to have waived his objections to the admissibility of entries in those particular stipulations by virtue of the stipulation itself where he had admitted that those particular incidents of misconduct were admissible. I don't think the accused has done so in this particular case. Now, in my mind it remains to be seen as to whether or not that particular entry is going to be admissible, or not admissible. It may become admissible. How, at this particular junction in the case, remains to be seen.

How is it admissible, trial counsel?

TC: *Sir, it would have been admissible on the merits. First of all, under [Mil.R.Evid.] 404(b)——*

MJ: *Well—okay. But we're not exactly on the merits now, are we?*

TC: *Yes, sir, but there's case law out there that says that the mere fact that someone pleads guilty does not preclude evidence from coming in in a Stipulation of Fact during the sentencing portion of it that would have been admissible on the merits.*

MJ: *Okay.*

TC: And I cite you that.

MJ: So you're contending that by virtue of the fact that it would be admissible as what, evidence of the accused's criminal misconduct?

TC: *Yes, sir, preparation, plan, knowledge, absence of mistake, things along those lines, should I had to have formulated a theory on the merits. It would be admissible under 404(b). And additionally, it would be admissible under Rule [for] Courts–Martial 101(b)(4) [sic], as the circumstances surrounding the crimes.*

MJ: Matters in aggravation?

TC: Yes, sir, as a pattern.

MJ: That's 1001?

TC: Yes, sir, 1001(b)(4).

MJ: Okay. Defense?

DC: Your Honor, in the sentencing phase of this trial as you can see——

MJ: Well, we're not at the sentencing phase of this trial yet, okay?

(Emphasis added.)

He subsequently admitted the challenged stipulation prior to entering his findings.

---

Appellant before this Court again contends that the military judge improperly considered evidence of uncharged misconduct in sentencing him at his court-martial. The uncharged misconduct was his purported altering of a total of 20–30 military aptitude tests rather than the 4 alterations for which he was actually found guilty. It was evidenced by one of appellant's pretrial confessions which was an attachment to the second stipulation of fact[1] intro-

---

1. The first stipulation was introduced as part of appellant's plea agreement with the convening

duced by the prosecution during the military judge's providence inquiry. Trial defense counsel argued that this evidence was inadmissible because it was uncharged misconduct evidence, (Mil.R.Evid. 404(a)); it was irrelevant to the offenses for which he pleaded guilty and was sentenced (Mil.R.Evid. 401 and 402); and it was unduly prejudicial within the meaning of Mil. R.Evid. 403.

Trial counsel, of course, disagreed and argued that the challenged portion of the stipulation was admissible prior to acceptance of appellant's guilty pleas under Mil. R.Evid. 404(b) and unidentified military case law, and as evidence of aggravation under RCM 1001(b)(4).[2] The military judge ultimately admitted the challenged prosecution evidence during appellant's providence inquiry. In addition, he permitted trial counsel to refer to the challenged statement during his argument for a more severe sentence for the offenses of which appellant was actually found guilty. Moreover, he permitted defense counsel to argue that these other purported offenses

should not be considered in sentencing. Nevertheless, he did not expressly rule on defense counsel's sentencing objections made during the providence inquiry or indicate what role, if any, this portion of the stipulation played in his sentencing deliberations and judgment.

Our initial concern in this case is with the clarity of the ruling of the military judge. *See United States v. DeYoung*, 29 MJ 78, 80 (CMA 1989). Appellant at trial was expressly concerned with the military judge's consideration of the uncharged-misconduct evidence on the question of his sentence, although he attempted to block its admission prior to findings. Yet, the judge's ruling extended only to admission of this evidence for the purpose of determining the accuracy of the guilty pleas. *See* RCM 910(a)(1), Discussion, and RCM 910(e).[3] Moreover, although trial counsel and defense counsel acted as if this evidence was also admitted on sentencing, no motion for admission of this evidence on sentencing was ever made by the prosecution in this guilty-plea case. Nevertheless,

---

authority. RCM 705(c)(2), Manual for Courts-Martial, United States, 1984, states:

> (2) *Permissible terms or conditions.* Subject to subsection (c)(1)(A) of this rule, subsection (c)(1)(B) of this rule does not prohibit an accused from offering the following additional conditions with an offer to plead guilty:
> (A) A promise to enter into a stipulation of fact concerning offenses to which a plea of guilty or as to which a confessional stipulation will be entered[.]

**2.** RCM 1001(b)(4) states:

> (4) *Evidence in aggravation.* The trial counsel may present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty. Except in capital
>
> cases a written or oral deposition taken in accordance with R.C.M. 702 is admissible in aggravation.
> Discussion
> Evidence in aggravation may include evidence of financial, social, psychological, and medical impact on or cost to any person or entity who was the victim of an offense committed by the accused and evidence of significant adverse impact on the mission, discipline, or efficiency of the command directly and immediately resulting from the accused's offense.

*See also* R.C.M. 1004 concerning aggravating circumstances in capital cases.

**3. Rule 910. Pleas**

> (a) *Alternatives.*
> (1) *In general.* An accused may plead not guilty or guilty. An accused may plead, by exceptions and substitutions, not guilty to an offense as charged, but guilty to an offense included in that offense. A plea of guilty may not be received as to an offense for which the death penalty may be adjudged by the court-martial.
> Discussion
> *See* paragraph 2, Part IV concerning lesser included offenses. A plea of guilty to a lesser included offense does not bar the prosecution from proceeding on the offense as charged. *See also* subsection (g) of this rule. *A plea of guilty does not prevent the introduction of evidence, either in support of the factual basis for the plea, or,* after findings are entered, in aggravation. *See* R.C.M. 1001(b)(4).
>
> \* \* \* \* \* \*
>
> (e) *Determining accuracy of plea.* The military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea. The accused shall be questioned under oath about the offenses. (Emphasis added.)

in light of our holding in *DeYoung,* we will consider that the challenged evidence was also admitted and considered by the judge for purposes of sentencing. *See also* RCM 1001(f)(2).[4]

 Trial counsel initially argued this evidence was admissible during the providence inquiry because it could have been admitted on the merits in a contested case under Mil.R.Evid. 404(b). *See* RCM 910(a), Discussion. This was a guilty-plea case, however, and the holding of this Court in *United States v. Wingart,* 27 MJ 128, 135–36 (CMA 1988), and *United States v. Holt,* 27 MJ 57, 60 (CMA 1988), suggest a contrary conclusion. This is especially true where no issue of entrapment was raised by appellant's guilty-plea responses, and trial counsel did not articulate the particular reason why its admission under Mil. R.Evid. 404(b) was "reasonably foreseeable as part of the process of establishing the factual basis for guilty pleas." 27 MJ at 60. Accordingly, the challenged stipulation of fact evidencing the additional test alterations was not shown to be admissible under RCM 910(e) prior to findings by the judge.

 Trial counsel's second argument for admission of the objected-to stipulation prior to findings was based on the aggravating-circumstances provision of RCM 1001(b)(4). He asserted that the uncharged-misconduct evidence indicates that the charged offenses were part of "a pattern" of conduct or "long running scam" from which appellant profited and the Army suffered to a far greater degree than otherwise indicated. He ignored the fact that evidence admitted for this purpose should be proffered after findings of guilty have been entered. *See* RCM 910(a), Discussion.

 In any event, the continuous nature of the charged conduct and its full impact on the military community are proper aggravating circumstances within the meaning of the above Manual provision. *See United States v. Ciulla,* 32 MJ 186 (CMA), *cert. denied,* —— U.S. ——, 112 S.Ct. 172, 116 L.Ed.2d 135 (1991); *United States v. Mullens,* 29 MJ 398 (CMA 1990). Moreover, an uncharged-misconduct objection to evidence offered for this purpose is not well-taken. *United States v. Glazier,* 26 MJ 268, 270–71 (CMA 1988). Finally, the additional acts of alteration within the same time period and at the same place as the charged acts were clearly relevant for this purpose and were not unduly prejudicial in this trial by military judge alone. *See United States v. Mays,* 33 MJ 455, 459 (CMA 1991). *Cf. United States v. Kinman,* 25 MJ 99 (CMA 1987). Accordingly, we hold that admission of the challenged evidence for this sentencing purpose, albeit premature, was not reversible legal error in this case.

The decision of the United States Army Court of Military Review is affirmed.

EVERETT, Senior Judge, concurs.

CRAWFORD, GIERKE, and WISS, JJ., did not participate.

COX, Judge (concurring):

In *United States v. Martin,* 20 MJ 227, 230 n. 5 (CMA 1985), *cert. denied,* 479 U.S. 917, 107 S.Ct. 323, 93 L.Ed.2d 295 (1986), I advanced the proposition that the test for admissibility of evidence in sentencing is whether "the evidence tends to prove or disprove the existence of a fact or facts permitted by the sentencing rules." Like all other evidence, sentencing evidence must also be tested for unfair prejudice. *Id., citing* Mil.R.Evid. 403, Manual for Courts–Martial, United States, 1984. In *United States v. Mullens,* 29 MJ 398 (CMA 1990), we considered RCM 1001(b)(4), Manual, *supra,* one of the sentencing rules, which defines "Evidence in aggravation."

---

**4.** RCM 1001(f) states:
(f) *Additional matters to be considered.* In addition to matters introduced under this rule, the court-martial may consider-
 (1) That a plea of guilty is a mitigating factor; and

(2) Any evidence properly introduced on the merits before findings, including:
(A) Evidence of other offenses or acts of misconduct even if introduced for a limited purpose[.]

We determined that evidence which shows "a continuous course of conduct involving the same or similar crimes, the same victims, and a similar situs within the military community" was admissible to show "the true impact of the charged offenses on the members of ... [the accused's] family." *Id.* at 400.

Applying these tests to the single admission of appellant that he defrauded the Government "twenty or thirty" times by submitting false tests demonstrates the impact of his continuing course of criminal conduct on the military mission.

Bench and Bar should be mindful, however, that the prejudicial impact of these "uncharged offenses" may outweigh their probative value. Court members should be carefully instructed as to their limited use. In this case, I am satisfied that the military judge gave appropriate weight to the confession. *See United States v. Kinman,* 25 MJ 99, 102 (CMA 1987) (Cox, J., dissenting). Accordingly, I concur in the majority opinion.