*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

_____

Before
HOLIFIELD, LAWRENCE, and STEWART
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Jacob C. JONES**
Aviation Electronics Technician Third Class (E-4), U.S. Navy
Appellant

**No. 201900181**

Decided: 23 December 2020

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Ann K. Minami

Sentence adjudged 16 April 2019 by a special court-martial convened at Naval Base Kitsap, Bremerton, Washington, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for ten months, and a bad-conduct discharge.

For Appellant:
*Captain Kimberly D. Hinson, JAGC, USN*

For Appellee:
*Major Kyle D. Meeder, USMC*
*Lieutenant Commander Timothy C. Ceder, JAGC, USN*

_____

**This opinion does not serve as binding precedent,
but may be cited as persuasive authority under
NMCCA Rule of Practice and Procedure 30.2.**

———————————————

LAWRENCE, Judge:

Appellant was convicted in accordance with his pleas of two specifications of wrongfully distributing a controlled substance, five specifications of wrongful use of a controlled substance, and two specifications of obstructing justice, in violation of Articles 112a and 134, Uniform Code of Military Justice [UCMJ].[1] In three assignments of error [AOEs], which we have renumbered, Appellant avers that: (1) his guilty pleas were improvident when his responses in the providence inquiry described fewer locations of charged transactions than were listed on the charge sheet; (2) the military judge abused her discretion in admitting Government sentencing exhibits consisting of uncharged misconduct that were cumulative and failed the Military Rule of Evidence [Mil. R. Evid.] 403 balancing test; and (3) the Entry of Judgment [EOJ] is in error as it fails to properly reflect that Appellant sought deferral of his adjudged reduction in grade. We find merit, but no prejudice to Appellant, in the third AOE and issue a modified EOJ. We affirm the convictions and the sentence.

## I. BACKGROUND

The Naval Criminal Investigative Service [NCIS] questioned Appellant following his positive result for amphetamine and methamphetamine on a urinalysis. Initially denying he used drugs, he eventually admitted to their use and distribution.

Beyond his drug use that first brought this to light, on a number of occasions over the course of eight months, Appellant purchased a variety of narcotics—methylenedioxymethamphetamine [MDMA], lysergic acid diethylamide [LSD] and psilocybin mushrooms—from civilian drug dealers "at or near"[2] cities in the Seattle, Washington, metropolitan area. Some he used personally, and some he distributed to other Sailors.[3]

———————————

[1] 10 U.S.C. §§ 912a and 934.

[2] Charge Sheet.

[3] *See* Pros. Ex. 1 at 1-3.

Appellant agreed to cooperate with NCIS in identifying Sailors to whom he would sell illegal drugs. However, after making initial arrangements to meet to distribute the drugs to each of these Sailors, Appellant called them from his cell phone and purposefully provided a warning that if they showed up to the meeting, they would be apprehended by NCIS.[4]

## II. DISCUSSION

### A. Appellant Entered Provident Pleas

In his first AOE, Appellant avers the military judge abused her discretion by accepting his pleas to Specifications 1, 3, 4, and 6 of Charge II despite his providency responses concerning the place of offense being inconsistent with these specifications and his stipulation of fact.[5]

"[W]e review a military judge's decision to accept a guilty plea for an abuse of discretion and questions of law arising from the guilty plea de novo."[6] A trial court may not accept an appellant's guilty plea where he "sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently . . . ."[7] "In determining whether a guilty plea is provident, the military judge may consider the facts contained in the stipulation [of fact] along with the inquiry of appellant on the record."[8] An appellant has the burden to show that the military judge abused her discretion—namely, that the record shows "a *substantial basis* in law or fact *to question the plea.*"[9]

The pertinent parts of the specifications allege that Appellant:

> 1: Wrongfully distributed MDMA at or near Bremerton, Seattle, and Tacoma, Washington, on divers occasions between March 2018 and October 2018;

---

[4] *See* Pros. Ex. 1 at 3.

[5] *See* Pros. Ex. 1.

[6] *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008).

[7] UCMJ art. 45.

[8] *United States v. Jones*, 69 M.J. 294, 299 (C.A.A.F. 2011) (alteration in original) (internal quotation marks omitted).

[9] *United States v. Phillips*, 74 M.J. 20, 22 (C.A.A.F. 2015) (emphasis added).

   3:  Wrongfully distributed LSD at or near Bremerton and
       Seattle, Washington, on divers occasions between
       March 2018 and October 2018;

   4:  Wrongfully used MDMA at or near Bremerton,
       Seattle, and Tacoma, Washington, on divers occasions
       between March 2018 and October 2018; and

   6:  Wrongfully used LSD at or near Bremerton and
       Seattle, Washington, on divers occasions between
       March 2018 and October 2018.

The military judge conducted a detailed colloquy with Appellant concerning the use of his sworn stipulation of fact—with the identical cities to those listed in the specifications—concluding as follows:

   MJ:  [Appellant], is everything in the stipulation of fact
        true and correct?

   ACC:  Yes, Your Honor.

   MJ:  [Defense counsel], is there any objection to Prosecution Exhibit 1 for identification?

   DC:  No, objection, Your Honor.[10]

In the plea colloquy, Appellant's initial responses to the military judge's questions described the place of the offenses consistent with both the specifications and the stipulation of fact. As the colloquy continued, he repeatedly conferred with his counsel and stated he had trouble remembering some of the exact details, such as the precise number of times he had distributed the drugs, the number of Sailors and others to whom he had distributed them, and the place of each offense.

Despite any discrepancies in language, to which there was no objection and in fact there was confirmation as to the sufficiency of the plea by Appellant and his trial defense counsel,[11] the place of offense is not an element or a substantial part of the drug offenses to which Appellant pleaded guilty. Namely, in Charge II, Specifications 1 [MDMA] and 3 [LSD], the

---

[10] R. at 17.

[11] *See* R. at 37 ("No further inquiry, Your Honor [concerning Specifications 1 and 3]."); R. at 51 ("Nothing further, Your Honor [concerning Specifications 4 and 6]."); and R. at 70 ("MJ: And are you, in fact, guilty of the offenses to which you are pleading guilty? ACC: Yes, Your Honor."). Appellant has not alleged any inadequacy in his representation by his trial defense counsel, and we find none.

elements for distribution of a controlled substance require: "(a) That the accused distributed a certain amount of a controlled substance; and (b) That the distribution by the accused was wrongful."[12] In Charge II, Specifications 4 [MDMA] and 6 [LSD], the elements for use of a controlled substance require: "(a) That the accused used a controlled substance; and (b) That the use by the accused was wrongful."[13]

Rule for Court-Martial [R.C.M.] 307(c)(3) states that the use of "at or near" is proper so long as the "place of the commission of the offense charged . . . [is] sufficient[ly] precis[e] to identify the offense and enable the accused to understand the particular act or omission to defend against."[14] Here, Appellant was on notice that the Government alleged there were divers occasions when he committed each of these offenses over an eight-month period and that he offended "at or near" cities that are all within the greater Seattle metropolitan area. We recognize that each city falls within 35 miles of one another and all are commonly accessed by roadway or ferry by thousands of people in that area on their daily commute or for leisure purposes—these are hardly "far-flung locations" as alleged by Appellant.[15]

While not directly raised as such, Appellant's argument suggests he believes there was a material variance between the offense charged and that to which he pleaded and was found guilty, simply due to the named locations not being identical. As our superior court noted in *United States v. Finch*, "[l]ocation usually is not a substantial part of the offense"[16] and that "'minor variances, such as the location of the offense . . . , do not necessarily change the nature of the offense and in turn are not necessarily fatal.'"[17]  Appellant was on notice concerning the location of the divers dates and places of his offenses as encompassing cities in proximity to the Seattle metropolitan area and indeed swore as "true and correct" the stipulation of fact that matched the charge sheet.

Even if one were to argue we should adopt a per se mileage radius constraining the accepted general notice provided by "at or near," we find similarly to an earlier unpublished opinion of this Court that "[a]lthough the

---

[12] *Manual for Courts-Martial*, United States (2016 ed.), pt. IV, ¶ 37.b.(3).

[13] *Id*. at pt. IV, ¶ 37.b.(2).

[14] R.C.M. 307(c)(3), Discussion (E).

[15] Appellant's Brief at 6.

[16] *United States v. Finch*, 64 M.J. 118, 122 (C.A.A.F. 2006).

[17] *Id*. at 121 (quoting *United States v. Teffeau*, 58 M.J. 62, 66 (C.A.A.F. 2003)).

facts elicited showed a variance between the place alleged and the actual place of the offense, this variance did not invalidate the plea to the offense; the inconsistency was to surplus language in the specification."[18] "Without the details of the specific location, Appellant is still guilty of the offense charged."[19] Any variance between the specifications as charged and those for which the military judge accepted Appellant's plea and found him guilty was not material.

We find that the military judge did not abuse her discretion in accepting Appellant's guilty pleas. We note that, if the military judge had recognized the discrepancy, the preferred method would be for her to further inquire about the specific Seattle-area cities listed as locations of Appellant's divers offenses of distribution and use of narcotics in the charge sheet, the stipulation of fact, and Appellant's testimony in the providence inquiry. Likely the military judge could have elicited responses from Appellant that suburbs and neighboring cities within this metropolitan area were indeed "at or near" one another. If the discrepancy remained, a better practice would be for the military judge to recess to have the parties align the language, or simply to except the locations in question when she accepted Appellant's pleas and announced her findings.

"To rise to the level of inconsistency contemplated by Article 45(a), [UCMJ,] matters raised at trial must have reasonably raised the question of a defense or must have been inconsistent with the plea in some respect."[20] Even unchanged, this discrepancy of location does not provide a substantial basis to question Appellant's pleas and entered guilty findings that he had personally used multiple narcotics and distributed them to at least three Sailors between March and October 2018.

Even if we were to assume there was error, Appellant has not shown he has suffered any prejudice. He claims that this location discrepancy increased the scope of his misconduct and not only resulted in a harsher sentence by the military judge but also negatively impacted his presentation of matters in clemency before the convening authority.[21] We disagree. Looking to the offenses and the entire record, were we to impose every limit sought by Appellant, on these four specifications alone the nature of the offense would

---

[18] *United States v. Hasse*, No. 9501263, 1995 CCA LEXIS 481, at *4 (N-M. Ct. Crim. App. 27 Dec 1995) (unpub. op.).

[19] *Finch*, 64 M.J. at 122.

[20] *United States v. Goodman*, 70 M.J. 396, 399 (C.A.A.F. 2011).

[21] *See* Appellant's Brief at 5-6.

remain the same. The Government charged Appellant and he clearly conveyed that he wrongfully distributed MDMA and LSD to fellow Sailors and wrongfully used the same substances himself. He did this on divers occasions over an eight-month period. He testified that he distributed MDMA, selling it to three different Sailors.[22] Appellant sold the LSD on separate occasions from his MDMA transactions to "about three Sailors."[23] Appellant distributed LSD to these Sailors "[a]bout two or three times."[24] He used MDMA "about five times"[25] and LSD "[f]our or five times."[26] Beyond these Sailors, Appellant admitted to the military judge that he simply did not recall the specifics, but thought there were others to whom he distributed MDMA or LSD.[27]

Given that the military judge granted the Defense motion to merge for sentencing Appellant's one-time use of methamphetamine and amphetamine with his use of MDMA, Appellant's sentence—with judge-alone unitary sentencing still in effect—was based upon the aforementioned Charge II, Specifications 1, 3, 4 (as merged), 6, and 7 (a one-time use of psilocybin mushrooms), and two Specifications under Charge III for obstructing justice by warning two different Sailors that his agreement to distribute MDMA to them was a "trap."[28] The number of Seattle-area cities where Appellant committed his offenses was by no means the lasting impression left with the military judge. On the specifications in question, he pleaded and was found guilty of committing them on divers occasions. He distributed drugs to fellow Sailors and admitted it was possible he had done so with others. He committed an additional one-time use offense, and he alerted potential drug-purchasing Sailors to the NCIS investigation in which he had agreed to cooperate. Moreover, every offense allowed the maximum punishment available for the forum. And we note that the adjudged sentence fell below the forum maximum to which Appellant was left exposed in his agreement with the convening authority.

Although the discrepancy on the place of offense would have ideally been resolved by the military judge with assistance from either trial or defense

---

[22] *See* R. at 27.

[23] R. at 31.

[24] R. at 36.

[25] R. at 38.

[26] R. at 41.

[27] *See* R. at 36.

[28] Charge Sheet.

counsel, we find no substantial basis in law or fact to question Appellant's guilty plea to these specifications. The military judge ensured that Appellant understood each element and established that he distributed and used the drugs in question, properly accepting his pleas of guilty to these offenses. We are satisfied that Appellant's guilt to these specifications was clearly established on the record through his testimony and his sworn stipulation of fact and that the military judge did not abuse her discretion when she accepted Appellant's plea without further inquiries.

## B. Government Sentencing Exhibits Were Properly Admitted

In Appellant's second, summary AOE, he avers that the military judge abused her discretion in "admit[ing] the entirety of Prosecution Exhibits 2-7 at sentencing, over defense objection, where the exhibits consisted mostly of inadmissible uncharged misconduct, were cumulative, and fail[ ] the [Mil. R. Evid.] 403 balancing test[.]"[29]

### 1. The standard of review

We review a military judge's decision to admit sentencing evidence for an abuse of discretion.[30] This "standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range."[31] Our considerations include the military judge's utilization of the Mil. R. Evid. 403 balancing test and following the procedures of R.C.M. 1001.[32] Wide discretion and greater deference is provided to the military judge who properly articulates on the record her balancing analysis.[33]

### 2. Discussion

Prosecution Exhibits 2-7 contained: the 119-page transcript of Appellant's initial 7 November 2018 and subsequent 13 December 2018 interviews with special agents of the NCIS;[34] NCIS's condensed summary of the same transcribed interviews;[35] photographs of advertising materials for one of

---

[29] Appellant's Brief at 7.

[30] *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009).

[31] *United States v. Lubich*, 72 M.J. 170, 173 (C.A.A.F. 2013).

[32] *See United States v. Carter*, 74 M.J. 204, 206-07 (C.A.A.F. 2015).

[33] *See United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000).

[34] *See* Pros. Ex. 2.

[35] *See* Pros. Ex. 3.

Appellant's drug dealers and a sketch of Appellant's barracks room showing where these were found;[36] NCIS interview summaries of a Sailor who observed Appellant purchase and use MDMA[37] and a cooperating witness who observed Appellant purchase, use, and distribute MDMA and LSD;[38] and an extraction report from Appellant's cell phone showing web searches for how long various drugs remained detectable and texts from Appellant discussing the responsiveness of his drug dealer and how many portions of drugs Appellant would consume to achieve his desired high.[39]

Appellant's trial defense counsel objected to the admission of the entirety of the exhibits, arguing they were riddled with improper evidence of Appellant's use and distribution of other drugs to which he pleaded not guilty—specifications that the Government had withdrawn and dismissed. As such, it was improper to allow this evidence in aggravation to be admitted under R.C.M. 1001(b)(4) when not directly related to the offenses to which he had pleaded guilty—the drugs were different, the timeframes were different, there was no continuous course of conduct, the exhibits were cumulative to the stipulation of fact and providence inquiry, and Appellant would suffer prejudice in their admission under the M.R.E. 403 balancing test.[40]

The Government countered that the uncharged misconduct was allowable as aggravation evidence as it was directly related to Appellant's course of conduct in wrongfully using drugs. In addition, the exhibits provided more detail and put in context Appellant's elusiveness with the NCIS special agents and his initial cooperation agreement and later obstruction of their investigation of other Sailors.[41]

In her ruling to admit the exhibits, the military judge stated:

> [T]he court believes that the evidence is offered not necessarily to show the same course of conduct as [trial defense counsel] mentioned, just covered by [*United States v. Nourse*].[42] But it appears to show a wider course of conduct as [*United States*] v.

---

[36] *See* Pros. Ex. 4.

[37] *See* Pros. Ex. 5.

[38] *See* Pros. Ex. 6.

[39] *See* Pros. Ex. 7.

[40] *See* R. at 83-85.

[41] *See* R. at 85-86.

[42] 55 M.J. 229 (C.A.A.F. 2001).

*Ross*[43] would indicate is allowable to consider on sentencing. Information that [Appellant] may have used other drugs during this time period, evidence of that in these exhibits, again, shows a wider course of conduct. It puts all of [Appellant's] actions into context. The court notes that Specifications 2, 5, and 10, the [D]efense refers to are alleged to have occurred in the same locations, in the same time period as the offenses [to] which [Appellant] has pled guilty.[44]

Despite Appellant's argument on appeal that admission of these exhibits comprising "over 125 pages of evidence" constituted prejudice that far outweighed their probative value,[45] these documents put in context the full, consistent course of Appellant's actions and were appropriately admitted. We find no abuse of discretion in the military judge's ruling. As our superior court has explained,

when uncharged misconduct is part of a continuous course of conduct involving similar crimes and the same victims, it is encompassed within the language 'directly relating to or resulting from the offenses of which the accused has been found guilty' under R.C.M. 1001(b)(4).[46]

These exhibits accurately represent Appellant's ongoing life in the drug world around the time of his offenses. They provide a broader picture of his personal familiarity with multiple drug dealers, his use of narcotics, his distribution to others—recalling his agreement to the military judge's suggestion that he may have distributed MDMA and LSD to more than the three Sailors he could remember[47]—the continuing timeframe and situs of his use and distribution of drugs throughout multiple Seattle-area locations, the circumstances of his agreement to cooperate with NCIS, and his subsequent decision to warn off other Sailors to undercut the ensuing NCIS investigation.

Significantly, the military judge in her ruling clearly expressed on the record how she had applied the Mil. R. Evid. 403 balancing test and that she, as the sentencing authority, would limit her consideration of the exhibits to

---

[43] 34 M.J. 183 (C.M.A. 1992).

[44] R. at 89.

[45] Appellant's Brief at 8.

[46] *Nourse*, 55 M.J. at 232 (citing *United States v. Mullins*, 29 M.J. 398 (C.M.A. 1990); *Ross*, 34 M.J. 183; *United States v. Shupe*, 36 M.J. 431 (C.M.A. 1993)).

[47] R. at 36.

their appropriate purpose, ensure it was not cumulative, and weigh the evidence in determining her sentence.[48] Accordingly, we find the military judge's admission of Prosecution Exhibits 2-7 under R.C.M. 1001(b)(4) was within the range of permissible choices available to her.

Even if we were to have found differently concerning the admission of these exhibits in aggravation, we believe Appellant suffered no prejudice. As discussed, *supra*, the plea colloquy and stipulation of fact already before the military judge provided ample support for her adjudged sentence.

## C. Incomplete Entry of Judgment

In his final AOE, Appellant asserts and the Government concedes that the Entry of Judgment does not reflect that Appellant made a request to defer the adjudged reduction in grade and that this request was denied by the convening authority.

Rule for Courts-Martial 1111 requires the military judge to place the court's judgment into the record of trial and to ensure this judgment "reflects the result of the court-martial."[49]

We conclude this omission to be a scrivener's error. We find no prejudice and Appellant asserts none. Nonetheless, Appellant "is entitled to have [his] official records correctly reflect the results of [his court-martial] proceeding," even if he suffers no prejudice from the error.[50] We take corrective action in our decretal paragraph.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and the sentence are correct in law and fact and that there is no error materially prejudicial to Appellant's substantial rights.[51] In accordance with this Court's authority,[52] we modify the Entry of Judgment and direct that it be included in the record.

The findings and sentence are **AFFIRMED**.

---

[48] *See* R. at 89-90.

[49] R.C.M. 1111(a)(2).

[50] *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998).

[51] UCMJ arts. 59, 66.

[52] R.C.M. 1111(c)(2).

Senior Judge HOLIFIELD and Judge STEWART concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

# United States Navy–Marine Corps Court of Criminal Appeals

| | |
|---|---|
| **UNITED STATES**<br><br>v.<br><br>**Jacob C. JONES**<br>Aviation Electronics Technician<br>Third Class (E-4)<br>U.S. Navy<br><br>           *Accused* | NMCCA NO. 201900181<br>**ENTRY**<br>**OF**<br>**JUDGMENT**<br>*As Modified on Appeal*<br>**23 December 2020** |

On 16 April 2019, the Accused was tried at Naval Base Kitsap, Bremerton, Washington, by a special court-martial consisting of a military judge sitting alone. Military Judge Ann K. Minami, presided.

## FINDINGS

The following are the Accused's pleas and the Court's findings to all offenses the convening authority referred to trial:

**Charge I:** **Violation of Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880.**

    *Plea*: Not Guilty.

    *Finding*: Dismissed.

**Specification:** **Attempt to View Child Pornography.**

    *Plea*: Not Guilty.

    *Finding*: Dismissed.

**Charge II:** **Violation of Article 112a, Uniform Code of Military Justice, 20 U.S.C. § 912a.**

    *Plea*: Guilty.

    *Finding*: Guilty.

**Specification 1:** **Wrongful distribution of methylenedioxymeth-amphetamine on divers occasions between March 2018 and October 2018.**

> *Plea*: Guilty.
> *Finding*: Guilty.

**Specification 2:** **Wrongful distribution of cocaine on divers occasions between March 2018 and October 2018.**

> *Plea*: Not Guilty.
> *Finding*: Dismissed.

**Specification 3:** **Wrongful distribution of lysergic acid diethylamide on divers occasions between March 2018 and October 2018.**

> *Plea*: Guilty.
> *Finding*: Guilty.

**Specification 4:** **Wrongful use of methylenedioxymeth-amphetamine on divers occasions between March 2018 and October 2018.**

> *Plea*: Guilty.
> *Finding*: Guilty.[53]

**Specification 5:** **Wrongful use of cocaine on divers occasions between March 2018 and October 2018.**

> *Plea*: Not Guilty.
> *Finding*: Dismissed.

**Specification 6:** **Wrongful use of lysergic acid diethylamide on divers occasions between March 2018 and October 2018.**

> *Plea*: Guilty.
> *Finding*: Guilty.

---

[53] After findings, the military judge merged for sentencing Specifications 4, 8, and 9 of Charge II as they all arose from the same action.

**Specification 7:** **Wrongful use of psilocybin mushrooms on divers occasions between March 2018 and October 2018.**

*Plea*: Guilty, by exceptions and substitutions of certain words.

*Finding*: Guilty of the Specification as excepted and substituted; the excepted words were dismissed.

**Specification 8:** **Wrongful use of amphetamine on or about 4 October 2018.**

*Plea*: Guilty.

*Finding*: Guilty.[54]

**Specification 9:** **Wrongful use of methamphetamine on or about 4 October 2018.**

*Plea*: Guilty.

*Finding*: Guilty.[55]

**Specification 10:** **Wrongful use of alprazolam (Xanax) on or about June 2018.**

*Plea*: Not Guilty.

*Finding*: Dismissed.

**Charge III:** **Violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934.**

*Plea*: Guilty.

*Finding*: Guilty.

**Specification 1:** **Obstructing Justice, wrongfully endeavoring to impede an investigation of another, on or about 7 November 2018.**

*Plea*: Guilty.

*Finding*: Guilty.

---

[54] After findings, the military judge merged for sentencing Specifications 4, 8, and 9 of Charge II as they all arose from the same action.

[55] After findings, the military judge merged for sentencing Specifications 4, 8, and 9 of Charge II as they all arose from the same action.

**Specification 2:** **Obstructing Justice, wrongfully endeavoring to impede an investigation of another, on or about 7 November 2018.**

> *Plea*: Guilty.
>
> *Finding*: Guilty.

## SENTENCE

On 16 April 2019, a military judge sentenced the Accused to the following:

**Reduction to pay grade E-1.**

**Confinement for ten months.**

**A bad-conduct discharge.**

The Accused served 124 days of pretrial confinement, to be deducted from the adjudged sentence to confinement.

On 23 April 2019, the Accused submitted a request to defer the adjudged reduction in pay grade until the date of final action on his sentence. The convening authority considered and denied this request on 24 April 2019.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court